# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF MISSOURI

| | |
|---|---|
| Shawn Seals | ) |
| Plaintiff, | ) ) ) |
| v. | ) Case No. 4:23-cv-00824-RK ) |
| Gully Transportation, Inc. | ) ) ) |
| Defendant. | ) |

## PLAINTIFF'S AMENDED CONSENT MOTION TO CERTIFY SETTLEMENT CLASS AND APPROVE FLSA SETTLEMENT

At a mediation on March 4, 2024, the Parties reached an agreement in principle to settle this case. On August 7, 2024, the Court denied Plaintiff's Motion for preliminary approval, and directed Plaintiff to seek approval for the attorney's fee portion of the settlement, and to provide information on how the settlement fund would be broken down among the class members [Doc. #23]. Now, Plaintiff Shawn Seals seeks, and Defendant Gully Transportation, Inc. does not oppose: (1) certification of a collective of individuals under Section 216(b) of the Fair Labor Standards Act (the "FLSA Collective") for purposes of administering the settlement, and (2) approval of the Settlement Agreement, attached as **Exhibit A**, and (3) approval of the notice and claims submission process outlined below and in the Settlement Agreement.

### I. Facts and Procedural History

The Named Plaintiff, Shawn Seals, filed this lawsuit on November 8, 2023, alleging that his employer violated the Fair Labor Standards Act ("FLSA") when it failed to pay him overtime for hours worked in excess of 40 per week. Plaintiff sought relief on behalf of himself and a collective of all persons who were employed as "yard hostlers" for Defendant Gully Transportation, Inc. ("Gully") from November 8, 2020 to the present. [Complaint, Doc. #1]. The

parties conducted a detailed review of the facts and circumstances underlying Plaintiff's allegations, including an individual analysis of putative class members' time and pay records for the statutory period. On March 4, 2024, the Parties mediated the matter with Dave Vogel, who is experienced in employment litigation generally, and with wage and hour mediations in particular. The matter resolved at that mediation.

Named Plaintiff and class counsel believe the claims asserted in this litigation have merit, and that the evidence developed to-date supports the claims asserted. Named Plaintiff and class counsel also recognize, however, that there is a risk of losing the case should they move forward, that putative class is small (5 employees), and consequently that class-wide damages are relatively low for this type of case. With that in mind, and given the agreed terms, Plaintiff and counsel believe the settlement confers substantial benefit on the class members now while avoiding the risk and expense of trying and potentially appealing a complex case. Defendant denies that Plaintiff's claims have merit and denies wrongdoing, but wishes to avoid the uncertainty and risk attendant with further litigation.

The main terms of the agreement are as follows:

- The settlement creates and makes available a common fund of $24,500 to settle the claims of the five class members

- Detailed notices will be provided to the class members after approval of the settlement, apprising class members of, among other things:
    - Their individual settlement amounts
    - Their right to participate in the settlement if they so wish, and
    - The procedure for claiming monies;

- Non-named settling Plaintiffs will only release the wage and hour claims arising out of their work as yard hostlers for Defendant.

- Attorneys' fees will comprise one-third of the fund ($8,166.67).

- Costs will total approximately $477.38

- Settlement administration costs will be handled by Plaintiff's counsel

- The Named Plaintiff will receive a service award of $1,000 for service that he provided during the litigation, and in exchange for a general release of all claims.

- The $15,855.95 constituting payment to the class (after attorney's fees, costs, and the proposed service award) will be distributed proportionally based on calculated overtime owed.

    For example, if a class member is calculated, based on their hourly wage and overtime hours worked, to be owed 1/3 of the overtime for prospective 5-person class, that class member will receive $5,285.32 ($15,855.95 x 1/3) should they choose to opt in.

## II. Question Presented

Should the Court grant Plaintiffs' motion to approve the settlement of this case when the settlement is fair, reasonable and provides an immediate, significant benefit to the class members who affirmatively chose to participate, and ends contested litigation prior to trial?

## III. Argument

The standard for court approval is straightforward under the FLSA: a district court should approve a fair and reasonable settlement if it was reached through contested litigation to resolve a bona fide dispute under the FLSA. *Garcia v. Triumph Foods*, Case No. 11-6046-CV-SJ-ODS (W.D. Mo. July 12, 2012) (citing *Lynn's Food Stores, Inc. v. U.S.*, 679 F.2d 1350, 1352-54 (11th Cir. 1982)). First, the court must be satisfied that the settlement was the product of "contested litigation." *Id.* (citing *Lynn's Food Stores, Inc.*, 679 F.2d at 1353). Second, the court must inquire as to whether the settlement involves a fair and reasonable resolution of a bona fide dispute between the Parties under the FLSA. *Id.* Typically, courts rely on the adversarial nature of a litigated FLSA case resulting in an arms-length settlement as indicia of fairness. *Id.* If the proposed settlement reflects a reasonable compromise over contested issues, the court should approve the settlement. *Id.* Plaintiffs respectfully submit that this Court should conclude that the parties'

settlement is a reasonable resolution of a *bona fide* dispute in contested litigation. Additionally, "a final certification finding is required when the parties propose to settle an FLSA collective action." *Adams v. City of Kansas City*, 19cv093, 2022 WL 949815, at *2 (W.D. Mo. Mar. 29, 2022).

### A. The settlement is the result of a bona fide wage and hour dispute

Plaintiff brought this lawsuit as a result of a bona fide wage and hour dispute with his employer. It is undisputed that Plaintiff and others similarly situated were not paid an overtime rate of 1.5 times their regular hourly rate for hours worked in excess of forty per week. The parties disputed whether Plaintiff and the other prospective class members were owed an overtime rate, or if they instead were subject to the motor carrier exemption in the FLSA, set forth at 29 U.S.C. § 213(b)(1). Plaintiff contended that he and other "yard hostlers" employed by Defendant are not exempt from overtime and were thus entitled to the wage premium. [Complaint, Doc. #1 at ¶¶7-9]. Defendant contended that Plaintiff and others similarly situated were exempt under the motor carrier exemption. [Affirmative Defenses, Doc. #6 at p.7, ¶¶ 17-19].

### B. The settlement is the fair and reasonable result of contested litigation

This case was the result of contested litigation. In determining whether an FLSA settlement is fair and reasonable, "courts consider several factors, including but not limited to (1) the stage of litigation during which the settlement was reached; (2) the complexity, expense, and likely duration of the remaining litigation; (3) whether the settlement is the product of arm's length negotiations; and (4) whether the settlement's value outweighs the potential recovery if litigation continues." *Adams*, 2022 WL 949815, at *3. Each of those factors supports approval of the settlement here.

This case resolved only after Defendant produced pay stubs and time records for all members of the class, which Plaintiff's counsel was able to analyze in advance of mediation. While

the Parties had not yet conducted depositions or completed all written discovery, they were in a position to analyze the amount of unpaid wages potentially at issue and analyze their relative risk. Based on the records produced, Plaintiff's counsel calculated class-wide damages for the five class members to be $20,851.18, with the possibility for liquidated damages to double that amount under the FLSA. As such, the $15,855.95 payment to the class after attorneys' fees, costs, and the requested service award for Mr. Seals represents a recovery of 76% of the calculated base damages. That $15,855.95 will be distributed proportionally among the opt-in class members based on the amount of overtime each class member has been calculated to be due in the event the Plaintiffs would ultimately prevail. As such, each class member is set to receive 76% of their calculated base damages after attorneys' fees and costs.

The complexity, duration, and likely expense of remaining litigation also weigh in favor of settlement. The Plaintiffs and their counsel learned that the potential collective action only had five members, some of whom had worked very few overtime hours. As such, resolving the case now, rather than going through the time and expense of depositions, retention of expert witnesses, briefing on class certification and summary judgment, trial, and a potential appeal, made sense for both the Named Plaintiff and the prospective class members. The matter then resolved after arms-length negotiations carried out through Dave Vogel, an experienced wage and hour mediator. At the time the matter resolved, serious questions of fact and law existed—in particular, whether the Plaintiffs fell under the motor carrier exception to the FLSA overtime provision—that placed the ultimate outcome of the litigation in doubt. Given those uncertainties, along with the time and expense required to take the case to trial and appeal, the settlement now provides more certain value and recovery that outweighs the potential recovery in light of the risks of moving forward.

The settlement offers a significant payment to the Plaintiffs and participating class

members now. Participating class members will receive meaningful awards after costs and attorneys' fees depending on the amount of overtime hours worked during the class period. Under these circumstances, a presumption of fairness should attach to the proposed settlement. *See Lynn's Food Stores*, 679 F.2d at 1354 (courts rely on the adversarial nature of a litigated FLSA case resulting in a settlement as indicia of fairness); *see also In re BankAmerica Corp. Securities Litig.*, 210 F.R.D. 694, 700 (E.D. Mo. 2002) ("In evaluating the settlement, the Court should keep in mind the unique ability of class and defense counsel to assess the potential risks and rewards of litigation; a presumption of fairness, adequacy, and reasonableness may attach to a class settlement reached in arms-length negotiations between experienced, capable counsel after meaningful discovery") (citations omitted).

**C. A Collective Action should be certified for purposes of settlement administration**

Under the FLSA, a Plaintiff may bring an action on behalf of him/herself and "other employee similarly situated." 29 U.S.C. § 216(b). "Plaintiffs may be similarly situated when they suffer from a single, FLSA-violating policy, and when proof of that policy or of conduct in conformity with that policy proves a violation as to all plaintiffs." *Bouaphakeo v. Tyson Foods, Inc.*, 765 F.3d 791, 796 (8th Cir. 2014). Plaintiff Seals seeks, and Defendant does not oppose, certification of this collective for purposes of settlement administration, consisting of

> all persons nationwide who were, are or will be employed by Defendant as Yard Hostlers who do not operate as a driver, driver's helper, loader or mechanic in interstate commerce from November 8, 2020 through November 8, 2023.

The class of Yard Hostlers employed by Defendant were similarly situated during the class period in that they performed the same or substantially similar jobs for Defendant, and were subject to the same policy that they would not receive overtime pay. Gully's defense, that its Yard Hostlers were exempt from overtime requirements under the Motor Carrier Exemption, was also common

to the class. Furthermore, Mr. Seals is an adequate representative of the class, and his interests are not adverse to the class, because he was a yard hostler employed by Defendant and similarly situated to the unnamed class members during the class period.

### D. The proposed notice process should be approved

The Settlement Agreement, **Exhibit A**, sets out the notice process by which members of the class will be notified of this settlement and their rights to participate. Within ten days of the Court's order approving the settlement, Defendant will provide Plaintiff's counsel with a list of the last known addresses and email addresses for the five members of the settlement class. Plaintiffs' counsel, as settlement administrator, will calculate the Settlement Awards to go to each class member, and will send out notice to the prospective class members within 30 days. The notice form is attached as **Exhibit C**. The form notifies the class members of the settlement terms, how they can participate in the settlement, what claims they are releasing by doing so, and how they can decline participation and retain their rights to bring their claims separately. Class members will then have 30 days to return the opt-in consent form attached as **Exhibit D** in order to participate in the class. Any opt-in forms received will be filed with the Court (with certain identifying information redacted), and settlement checks will then be distributed.

Under the circumstances, the notification process outlined above and set forth in detail in the Settlement Agreement is a fair and economical way to provide prompt notice to all class members of their rights in this case.

### E. The proposed service award to Mr. Seals is reasonable and should be approved

Plaintiffs seek a service payment for the named Plaintiff, who provided invaluable service to the group, totaling $1,000.00. Named Plaintiff provided necessary evidence for the parties, counsel, and the Court, furthering the interests of the class as a whole. Named Plaintiff worked

with Class Counsel before and throughout this litigation in pursuing these claims on behalf of class members, including providing documents, and attending mediations.

The reason for this service payment, is to ensure that those individuals who chose to participate and provided invaluable information about Defendant, its policies, procedures, and information regarding the Defendant, are compensated for the risk that they undertook in bringing this action. But for his actions, Defendants would have retained the benefit of its alleged failure to pay overtime. The Named Plaintiff should be rewarded to encourage others who would be subject to future FLSA violations to assert their rights to fair pay under federal wage law.

Courts recognized that the risk, time and dedication that an individual devotes to a lawsuit that inures to the common benefit of others warrants a service award above-and-beyond what the typical class member is receiving. *See Tussey v. ABB, Inc.*, 06-04305-CV-C-NKL, 2012 WL 5386033 (W.D. Mo. Nov. 2, 2012) (approving $25,000 service awards for the three class representatives); *Wolfert v. UnitedHealth Group, Inc.,* No. 4:08CV01643(TIA), at *4 (E.D. Mo. Aug. 21, 2009) (approving an incentive award of $30,000); *Matheson v. T-Bone Rest.*, LLC, 2011 WL 6268216, at *9 (S.D.N.Y. Dec. 13, 2011) (approving $45,000 service award to named plaintiff in tip pool/OT case settlement after two and a half years of litigation); *Mentor v. Imperial Parking Sys., Inc.*, 2010 WL 5129068, at *5 (S.D.N.Y. Dec. 15, 2010) (approving $40,000 service award to named plaintiff in FLSA settlement after five years of litigation); *Willix v. Healthfirst, Inc.*, 2011 WL 754862, at *7 (E.D.N.Y. Feb. 18, 2011) (approving $30,000 service award to named plaintiff in FLSA settlement after three years of litigation); *Flores v. Anjost Corp.*, 2014 WL 321831, at *9 (S.D.N.Y. Jan. 29, 2014) (approving $25,000 service awards for five named plaintiffs in FLSA settlement after three years of litigation); *Duchene v. Michael Cetta, Inc.*, 2009 WL 5841175, at *3 (S.D.N.Y. Sept. 10, 2009) (approving $25,000 service award to named plaintiff in tip pool case

settlement after three years of litigation); *Capsolas v. Pasta Res. Inc.*, 2012 WL 4760910, at *9 (S.D.N.Y. Oct. 5, 2012) (approving $20,000 service award for named plaintiff in tip credit case settlement after two years of litigation). In light of the above, Plaintiff requests that the service award of $1,000 be approved.

  **F. The requested attorneys' fees are reasonable and should be approved.**

To further the public policy underlying the FLSA, employees who sue for back wages and liquidated damages under the statute are entitled to also receive an award for reasonable attorneys' fees and costs. 29 U.S.C. § 216(b). Indeed, the fee-shifting provision of the FLSA is mandatory. *Id.* (mandating that "the court in such action shall . . . allow a reasonable attorney's fee to be paid by the defendant, and costs of the action"). "Public policy favors adequate fee awards in cases involving fee-shifting statutes so as to encourage aggrieved plaintiffs to bring such actions and to provide incentives for counsel to take them on a contingent fee basis." *Swinton v. SquareTrade, Inc.*, 454 F. Supp. 3d 848, 887 (S.D. Iowa 2020). The requested $8,166.67 in attorney's fees is not only reasonable based on the traditional factors typically weighed by courts in considering attorney's fee requests, but represents a significant reduction from the lodestar calculation. As such, the Court should approve the requested fee award.

    **i. The lodestar analysis counsels in favor of approval.**

When considering the reasonableness of an attorneys' fee, the Court generally begins with a lodestar analysis. A lodestar calculation is typically performed by "multiplying the number of hours reasonably expended on litigation by a reasonable hourly rate." *Jones v. RK Enterprises of Blytheville, Inc.*, 632 F. App'x 306, 306 (8th Cir. Jan. 29, 2016) (memorandum opinion).

Using the lodestar method here, Plaintiff's counsel incurred $30,717.50 in attorneys fees. *See* **Exhibit E**, Declaration of Michael Hodgson; **Exhibit F**, Declaration of John Ziegelmeyer;

**Exhibit G**, Declaration of Kevin Todd. This fee represents 48.7 hours billed by three attorneys. Mike Hodgson is the founder and managing partner of The Hodgson Law Firm, LLC. He has been practicing law since 2003, when he graduated with honors from the University of Wisconsin Law School. Mr. Hodgson is an experienced class and collective action litigator, and the vast majority of his legal practice is devoted to civil unpaid wage claims under both state and federal law. He has been an active member of the Kansas City chapter of the National Employment Lawyers Association ("NELA-KC"). He is known as an authority on wage and hour class actions, having given numerous CLE lectures on class actions and wage and hour litigation at local, state, and national conferences. On this Mr. Hodgson logged 31.5 hours at a rate of $850/hour. In order to ensure he was billing no more than necessary for the matter, Mr. Hodgson cut certain time from his billed hours. **Exhibit E.**

John Ziegelmeyer is the co-managing partner of the Kansas City office of HKM Employment Attorneys, LLP. Since graduating from the University of Tulsa College of Law in 2006, Mr. Ziegelmeyer has 17 years of experience in the practice of plaintiff-side employment litigation. He is experienced both in single plaintiff cases, and in class and collective action matters such as this one. He has been an active member of NELA-KC since 2007, and he previously served as the Labor and Employment Committee Chair of the Kansas City Metropolitan Bar Association. Mr. Ziegelmeyer was elevated to Partner in the Employee's Rights Law Firm in 2014, and he opened the Kansas City office of HKM Employment Attorneys in 2018. Throughout his career, Mr. Ziegelmeyer has been involved in multiple bench and jury trials, as well as appeals to the Missouri Court of Appeals, the United States Courts of Appeals, and the Missouri Supreme Court. In 2023, Mr. Ziegelmeyer was approved at a rate of $650/hour by Judge Kanatzar in Jackson County, MO. **Exhibit F**. On this matter, he logged a total of 14.2 hours at a rate of $650/hour.

Kevin Todd graduated with honors from the University of Michigan Law School in 2020, served as a term law clerk in the Middle District of North Carolina, and has been an associate at HKM Employment Attorneys LLP since August 2021. He is an active member of both NELA-KC and the Kansas City Metropolitan Bar Association. Mr. Todd has gained experience taking and defending depositions, arguing discovery motions in state court, examining a witness at a default judgment hearing in federal court, successfully overcoming Motions for Summary Judgment in both state and federal court, and briefing and arguing a successful appeal to the Eighth Circuit Court of Appeals in the case *Anderson v. KAR Global*, 78 F.4th 1031 (8th Cir. 2023). Within the last year, he has been approved at a rate of $375/hour both in Jackson County and in the District of Kansas. **Exhibit G** On this matter, Mr. Todd has logged a total of 16.5 hours at a rate of $375/hour.

      ii.      **Reasonableness Factors**

In considering deviations from the lodestar calculation, the Court considers a number of factors set out in *Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974) (factors considered by the Eighth Circuit in *Allen v. Tobacco Superstore, Inc.* 475 F.3d 931, 943-44 (8th Cir. 2007)). Those factors include:

> (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the attorney's preclusion of other employment due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) the time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (1) the 'undesirability' of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases."

*Allen* at 944 n.3. "Not all of the factors apply in every case, and the Court has broad discretion to determine which factors are relevant and the weight to assign those factors." *Huyer v. Wells Fargo & Co.*, 314 F.R.D. 621, 628 (S.D. Iowa 2016). While attorney's fees are subject to court review,

"a request for attorney's fees should not result in a second major litigation. Ideally, of course, litigants will settle the amount of a fee." *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983).

Here, a number of the factors counsel in favor of accepting the lodestar rate. As set forth above, counsel invested time and labor into this matter to justify a fee award of $30,717.50. The applicability of the motor carrier exemption to employees like Mr. Seals is a fact-intensive inquiry that, while not novel, requires significant legal skill to elucidate. Work on this matter necessarily precluded Plaintiff's counsel from work on other matters, although this factor is mitigated by the fact that this case resolved at a relatively early stage in the process, after the exchange of some written discovery but before extensive briefing or trial. As set forth above and in **Exhibits E-G**, Plaintiff's counsel are skilled litigators with significant experience in wage-and-hour matters and class and collective actions.

Because counsel accepted this matter on a contingent fee, because the matter resolved at a relatively early stage of the case, and in light of the customary contingent fee on cases such as this one, Plaintiff and counsel agreed to settle the claim for attorney's fees at 1/3 of the total recovery, which constitutes a significant reduction from the lodestar calculation. Courts in this Circuit routinely approve and apply the "percentage-of-the-fund" approach in awarding attorneys' fees in common fund cases. *See, e.g., Johnston v. Comerica Mortg. Corp,* 83 F.3d 241, 245-7 (8th Cir. 1996) (approving the percentage method as one method of awarding fees); *Petrovic v. AMOCO Oil Co.,* 200 F.3d 1140, 1157 (8th Cir. 1999); *In re U.S. Bancorp Litig.,* 291 F.3d 1035, 1038 (8th Cir. 2002); *In re Xcel Energy,* 364 F. Supp. 2d at 993. As courts, including the Eighth Circuit, have routinely recognized, using a percent of the fund approach most closely aligns the interests of the lawyers with the class, since the more that is recovered for the class, the more the attorneys stand to be paid. *See Johnston v. Comerica Mortgage Co.*, 83 F. 3d 241, 244 (8th Cir. 1996) (noting that

the percent of benefit approach has been recommended in common fund situations); *see also In re Charter Communs., Inc.*, 2005 WL 4045741, at *13 (E.D. Mo. June 30, 2005).

Courts in the Eighth Circuit and in Missouri have frequently approved attorneys' fees of roughly 1/3 of the common fund. *See In re U.S. Bancorp Litig.,* 291 F.3d 1035, 1038 (8th Cir.2002) (affirming fee award representing 36% of the settlement fund as reasonable); *In re Xcel,* 364 F.Supp.2d at 998 (collecting cases demonstrating that district courts routinely approve fee awards between 25% and 36%); *Husein v. Bravo Brio Restaurant Group*, No. 16-cv-00435-DW, Doc. 48 (W.D. Mo. December 13, 2017) (approving one-third of the maximum settlement fund as attorneys' fee in an FLSA class action) (Whipple, J.); *Nobles v. State Farm Mutual Automobile Co.,* No. 10-04175-NKL, 2014 WL 12616695 (W.D. Mo. March 4, 2014) (approving one-third of total maximum settlement fund) (Laughrey, J.); *Harger v. Fairway Management,* No. 2:15-cv-04232-NKL, ECF Doc. No. 147 (W.D. Mo. April 4, 2017) (Laughrey, J.) (same); *Hernandez v. Texas Capital Bank*, No. 07-0726-ODS, Doc. 107 (W.D. Mo. July 14, 2009) (same) (Smith, J.); *Busler v. Enersys Energy Products Inc.*, No. 09-0159, Docs. 111, 120 (W.D. Mo.) (same) (Gaitain, J.); *Osby v. Citigroup, Inc.*, No. 5:07-06085-NKL, Doc. 128 (W.D. Mo. June 22, 2009) (same) (Laughrey, J.); *Brown v. Time Warner Cable, Inc.*, No. 13-0353-CV-W-BP (W.D. Mo. March 3, 2014) (same) (Phillips, J.); *In re U.S. Bancorp Litigation*, 291 F.3d at 1038 (affirming award of 36% of common fund plus expenses); *Hamilton, et al. v. ATX Services Inc.*, No. 08-0030-SOW (W.D. Mo. May 6, 2008) (order under seal approving attorneys' fees and expenses at 34%); *Burks v. Bi-State Development Agency*, No. 4:09CV1302 (MLM) (E.D. Mo. Jan. 31, 2011) (Doc. 91, p. 3, ¶ 8 & Doc. 102, p. 4, ¶ 9) (approving 33-1/3% attorney's fee award in wage and hour claim); *Wolfert v. UnitedHealth Group, Inc.*, No. 4:08CV1643 (TIA) (E.D. Mo. Oct. Aug. 21, 2009) (Doc. 37, p. 2 & Doc. 38, p. 4, ¶ 9) (approving attorney fee award of 33% of the maximum gross

settlement amount in overtime claim); *Morak, et al. v. CitiMortgage, Inc.*, No. 07-1535 (E.D. Mo. Sep. 26, 2008) (order under seal approving attorneys' fees and expenses at 33%); *Staton v. Cavo Communications, Inc.*, No. 08-0273 (E.D. Mo. Jan. 14, 2009) (order under seal approving attorneys' fees and expenses at 33%); *Edney, et. al. v. The Golf Stop*, No. 11-00185-CV-W-DW (W.D. Mo, Nov. 11, 2011) (Whipple, J.) (approving a fee award of 33% of the settlement fund); *Michaels v. Diodes Fabtech*, No. 4:12-cv-01082-GAF (W.D. Mo., January 14, 2013) (Fenner, J.) (same); *See also Robinson v. Flowers Foods, Inc.,* No. 16-02669-JWL (D. Kan. May 31, 2018) (awarding one-third of common fund in FLSA settlement for pre-and post-shift changing time) (Lungstrum, J.); *Wass v. NPC International, Inc.,* No. 02254-JWL, Doc. 359 (D. Kan. June 27, 2012) (Lungstrum, J.) (approving one-third of the common fund in FLSA case); *Perry v. National City Bank*, Order Approving Settlement, Attorneys' Fees and Service Awards, Case No. 3:05-CV-00891-DRH-PMF (S.D. Ill. March 3, 2008) (approving requests for attorneys' fees and costs in the amount of thirty-three percent (33%) of the Settlement Fund in FLSA case).

Here, class counsel seeking 1/3 of the common fund falls well within the typical range on cases like this one. It also, as noted above, represents a significant reduction from the lodestar calculation.

**G. The proposed costs are reasonable and should be approved.**

In addition to attorney's fees, Plaintiff and his counsel seek recovery for $477.38 in costs. It is appropriate and customary in class litigation for class counsel to be reimbursed for out-of-pocket litigation expenses from a common settlement fund. *See In re Giant Interactive Grp., Inc. Sec. Litig.*, 279 F.R.D. 151, 165 (S.D.N.Y. 2011) ("It is well established that counsel who create a common fund are entitled to the reimbursement of expenses that they advance to a class."); *see also* 2 Joseph M. McLaughlin, MCLAUGHLIN ON CLASS ACTIONS, § 6:24 (8th ed. 2011) (noting

that "class counsel also is entitled to reimbursement from the class recovery (without interest) for the costs and reasonable out-of-pocket expenses incurred in prosecuting the litigation"). Reimbursable expenses include costs incurred for legal research, photocopying, document production, deposition transcripts, travel, meals, lodging, postage, and expert witness services. *Hale v. Wal-Mart Stores, Inc.*, Nos. 01CV218710, 02CV227674, 2009 WL 2206963, ¶ 6 (Mo. Cir. Ct. Jackson Cty. May 15, 2009) (Midkiff, J.). The expenses that class counsel seek compensation fall within these acceptable categories. Here, Plaintiff and class counsel seek recovery of $477.38 in expenses, which covers the filing fee and service of process. **Ex. F,** Ziegelmeyer Decl.

## IV.    Conclusion

For the reasons set forth herein, Plaintiffs request, and Defendant does not oppose, that the Court find the settlement reached by the Parties to be a fair and reasonable settlement of a bona fide wage and hour dispute, CERTIFY the case as a collective action for purposes of settlement administration, and APPROVE the settlement and notice process outlined above.

**HKM EMPLOYMENT ATTORNEYS LLP**

By:    /s/ *Kevin A. Todd*

| | |
|---|---|
| John J. Ziegelmeyer III | MO No. 59042 |
| Brad K. Thoenen | MO No. 59778 |
| Kevin A. Todd | MO No. 73048 |
| Ethan A. Crockett | MO No. 74921 |

jziegelmeyer@hkm.com
bthoenen@hkm.com
ktodd@hkm.com
ecrockett@hkm.com
1501 Westport Road
Kansas City, Missouri 64111
816.875.9339

and

**The Hodgson Law Firm, LLC**

Michael Hodgson    MO Bar No. 63677

3609 SW Pryor Road
Lee's Summit, MO 64082
Tel: 816.600-0117
Fax: 816.600-0137
mike@thehodgsonlawfirm.com


ATTORNEYS FOR PLAINTIFF


## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on September 6, 2024, a copy of the foregoing was served via the Court's electronic filing system on all counsel of record.

/s/ *Kevin A. Todd*
Attorney for Plaintiff